Kottmyer, J.
Plaintiffs, Dennis Meka and Gail Meka, brought this action against defendants Hunne-man and Company/Coldwell Banker, Elaine Sawyer, Richard Pabich, and Diane Pabich asserting claims for negligence, negligent misrepresentation and intentional misrepresentation. They have also asserted claims under G.L.c. 93A against Hunneman and Sawyer.
The Pabichs sold a house to the Mekas in September of 1997. Sawyer, an agent of Hunneman, was the Pabichs’ broker. The plaintiffs allege that the defendants made misrepresentations on which they relied in purchasing the house.
The negligence and misrepresentation claims were tried to a juiy. At the close of the evidence, the Court directed a verdict on the negligence claims (Counts I through III). The juiy returned verdicts in favor of the plaintiff against Pabich and Sawyer/Hunneman on the negligent misrepresentation claims (Counts IV through VI). The juiy returned a verdict in favor of defendants on the claims for intentional misrepresentation (Counts VII through IX). After applying certain insurance proceeds to the damages as determined by the juiy per stipulation of the parties, the damages awarded against the Pabichs totaled $1,845.13 and damages against Sawyer/Hunneman $6,642.48.[1]
A. Motions for Judgment Notwithstanding the Verdict
The defendants filed motions for judgment notwithstanding the verdict. Relying on Sound Techniques v. Hoffman, 50 Mass.App.Ct. 425 (2000), rev. denied, 433 Mass. 1102 (2001), they argue that exculpatoiy clauses in purchase and sale agreements are enforceable to the extent that they protect against liability for negligent as opposed to intentional misrepresentation.
The Purchase and Sale Agreement (Ex. 11) provides in paragraph 29:
The Buyer acknowledges that he has not relied upon any warranties or representations not incorporated in the Agreement, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker.
None
(If none, state “none”: if any listed, indicate by whom the warranty or representation was made.
The Offer (Ex. 14) was subject to the Buyer’s right to obtain an inspection of the premises. Before executing the Purchase and Sale Agreement, the Mekas obtained an inspection by a qualified person.
In Bates v. Southgate, 308 Mass. 170, 182-83 (1941), the Supreme Judicial Court held that clauses in contracts attempting to protect a parly against the consequences of his own fraud are against public policy and void. In reaching that result, the Court weighed “the advantages of certainly in contractual relations against the harm and injustice that result from fraud.” Id. at 182. In Sound Techniques, 50 Mass.App.Ct. at 433, the Appeals Court addressed the applicabiliiy of the rule established in Bates to claims of negligent misrepresentation. The Court distinguished negligent misrepresentations from deliberate misrepresentations involving “intentional misconduct that justified judicial intrusion upon contractual relationships in order to prevent the wrongdoer from securing contractual benefits for which he had not bargained.” Id. The Court concluded that there was no reasonable basis for ignoring the plain language of an exculpatoiy clause where 1) there was no evidence that the integrity of the bargaining process was tainted by illegality, fraud, duress, unconscionability, or any other invalidating cause; 2) the lease was not a contract of adhesion; 3) there was no evidence of unequal bargaining power; and 4) the plaintiff was represented by counsel and acceptance of the lease was conditioned upon an inspection by an acoustical engineer that was in fact conducted. Id. at 433-34.
Plaintiffs correctly point out that the Court in Sound Techniques expressly limited its holding to the circumstances of that case, a commercial transaction, stating *61 that “it [left] for another day those situations involving, among others, consumers, a gross disparity in the bargaining position of the parties, or unconscionable contract clauses.” Id. at 434 n.11. Notwithstanding that this case does not involve a commercial transaction, it is nonetheless governed by the Court’s holding in Sound Techniques. Here, there is no evidence of unequal bargaining power. On the contrary, plaintiffs were represented by counsel, their offer to purchase the property was expressly conditioned on an inspection and an inspection was in fact conducted by a professional whom plaintiffs selected because he was known by them to be thorough. Lastly, defendants’ liability is predicated on negligent misrepresentation, the jury found that plaintiffs had not proved an intentional misrepresentation by any defendant. Nothing in the circumstances of this case implicates the concerns which led to the Court’s holding in Bates v. Southgate.
For the reasons stated, the defendants’ motions for judgment notwithstanding the verdict on the negligent misrepresentation claim are allowed.
B. Chapter 93A
The plaintiffs claim that Sawyer and Hunneman violated G.L.c. 93A by making certain misrepresentations. “(N]ot every negligent act is unfair or deceptive and thus unlawful under G.L.c. 93A, §2.” Walsh v. Chestnut Hill Bank & Trust Co., 414 Mass. 283, 288 (1993), quoting Swanson v. Bankers Life Co., 389 Mass. 345, 349 (1983).
For the following reasons, I find that plaintiffs have failed to satisfy their burden of proving that defendant Sawyer committed an unfair or deceptive act.
a) Plaintiffs claim that the statement that the house was “completely gutted and renovated in 1989" was a misrepresentation. I find that the statement was substantially true. The wiring, plumbing and heating systems and the windows and doors had been replaced. Some interior walls had been removed. Moreover, plaintiffs did not prove reliance on this statement. As reflected in the inspection report obtained by plaintiffs, it was obvious that portions of the house were not affected by the renovations.
b) Plaintiffs claim that Sawyer concealed information about leaks. There is no evidence that Sawyer knew of an ongoing water filtration problem in 1997 when the house was sold to the plaintiffs. There was evidence that Sawyer knew that the former owners of the property, the Kinchs, had experienced leaks during the first two years they owned the property (1990-92). But there was no evidence that Sawyer had reason to believe that the corrective work done by the Kinchs before they sold the house to the Pabichs in 1992 had not remedied the problem. Absent actual knowledge of an undisclosed latent defect, there was no violation of M.G.L.C. 93A. Underwood v. Risman, 414 Mass. 96, 99-103 (1993); Urman v. South Boston Savings Bank, 424 Mass. 165, 169-70 (1997).
c)The plaintiffs have not established by a preponderance of the evidence that Sawyer had actual knowledge of an existing defect in the clapboards on the front of the house which impacted their capacity to hold paint. I find that while Janet Kinch had told Sawyer that she had voluntarily given the Pabichs a credit of $7,000 to have the house painted, she did not tell Sawyer that she suspected that there was a defect in the clapboards. At best, the evidence establishes that Sawyer had reason to suspect, but did not disclose, that the Rinches had had a problem with the clapboards. That is not an adequate factual predicate for the imposition of liability under G.L.c. 93A. Underwood v. Risman, supra, 414 Mass. 100-01 (1993).
Conclusion
For the foregoing reasons, it is Ordered:
1) Defendants’ motions for judgment notwithstanding the verdict on the negligent misrepresentation claims in Counts IV through VI are Allowed and
2) Judgment shall enter in favor of defendants Hunneman and Sawyer on Counts X and XI alleging a violation of G.L.c. 93A.

 The jury returned a verdict in favor of defendant Hunneman on claims of negligent and intentional misrepresentation by its agent Dan Walsh.